Good morning, and may it please the Court, I'm Jeffrey Ehrlich for the Appellant. This is an insurance coverage case, but it's not a typical one because the parties do not have a disagreement about what the policy covers or what the policy excludes. Both parties agree that this insurance policy does not cover the defective plumbing system that was installed in the hotel. Both parties do agree that the policy does cover damage to other work to the hotel itself that resulted from the defective plumbing system. So what would an example of that be, the other work? That would be when the system leaked and the drywall and the walls around it, the tile was damaged and had to be replaced. So there's no dispute about that? No dispute about that. That helps us narrow it down a little. I really – most cases get more complicated as they get briefed. This one gets simpler. There's one disagreement of substance in this case. Innscorp's argument is that there is no coverage here because the underlying judgment did not award Mr. Bailey assent in damages for this covered damage. As Innscorp reads the underlying judgment, all of the award of $1.6 million was for the replacement of the plumbing system itself, and that's not covered. Now, they make this argument in reference to looking at the underlying judgment. A trial exhibit in the underlying action 334, which is in the Supplemental Record, Volume 2, page 342, and that exhibit, Exhibit 334, was relied on by the superior court judge in his statement of decision when he awarded damages. Counsel, from reading your brief, I didn't see this issue framed the way you're framed now. I thought that there was a question about exclusions in the policy. I didn't have the benefit of the red brief when I filed my brief. And I originally thought that this case was going to turn on a disagreement about what the exclusions covered, and I was going to argue that this policy is incomprehensible and does not satisfy the requirements of California law. It might even be illusory in that it reads at the very beginning, we will pay those sums that the insurance becomes legally obligated to pay. Isn't that circular? It would appear so. Everybody agrees, I think, so we can get rid of that, that the reason that the word insurance really should be insured. That's correct, Your Honor. What happened was once I saw the argument in the red brief, it's not a coverage argument. The argument that Inscorp makes is that this judgment has to be affirmed not for the reason, the application of Exclusion J6 that Judge Ishii made, but because there's simply no covered damage. That's their argument. That's their entire argument. And the whole case, therefore, hinges on whether you can look at Exhibit 334 and as a matter of law determine that there are no covered damages. Now, they made that argument below, and Judge Ishii rejected it, saying that since the Federal courts are staffed mostly by nonplumbers, you cannot tell from the exhibit. And if you go through, what you find is in that, if you page through. Well, you would agree with me that 334 is an estimate by an expert of what it's going to cost to demolition. That means rip out, put in new plumbing, and then put back the, what you've ripped out. That's right. So there's nothing in 334 which really speaks to how many square feet of drywall was damaged, how many square feet of floor was damaged by the leaks. The idea of this estimate is that you're going to have to take out all the walls and all the leaks to put the plumbing back in, whether they've been damaged or not, right? There is clearly, I guess I should just say, I think that's right. I think I agree. But on the other hand, in your favor, there is a specific finding by the good superior court judge, to whom I feel very kindly, saying that the system has experienced an extraordinarily high number of leaks which have repeatedly damaged the adjacent drywall, paint, insulation, tile, et cetera. Correct. So there's a finding of damage. He didn't quantify it. Right. Well, let me take a step back. We have, you're reviewing a summary judgment. So, and it was Innscorp's summary judgment. We lost our summary judgment. Innscorp had the burden, the initial burden to show as a matter of law that they were entitled to judgment, that we could not prove our case. And they rely on Exhibit 334. And they say, if you look at Exhibit 334, that shows as a matter of law plaintiffs cannot prove their case. Judge Ishii rejected that, and I submit he did so correctly, because you cannot tell just from that exhibit. That estimate includes finished carpentry, rough carpentry, gypsum board, electric sockets, all kinds of things. You can't tell from that estimate what was damaged by water and what was not damaged but has to be ripped out anyway. That's a triable issue of fact at trial. That's what Judge Ishii found. The reason that this is important – well, actually, before I get to that, I want to tell you what I believe Innscorp's reasoning is, because I don't think it withstands analysis. Innscorp says the reason that you can tell that there is no covered damage included in this estimate is because it also includes a 10 percent construction contingency and a 35 percent contingency for the – collectively for unforeseeable events and unforeseeable items of work. And the trial judge in the underlying action said, I don't see an evidentiary basis for a 35 percent contingency for unforeseeable items. So he struck it. That's not part of the judgment. Innscorp says that by striking that 35 percent contingency, that necessarily means that there's nothing for damages in Exhibit 334. I do not believe that is logical. That's like saying you can recover for replacement materials, but not for overhead supervision. Yes. I don't believe Exhibit 334 gets them where they need to go. And, therefore, now we get finally to one more area of agreement between the parties. And I will concede this is implicit agreement. Both parties agree that Judge Ishii did not correctly apply Exclusion J6 when he granted summary judgment. The reason we claim it is because he did not apply the exception to the exclusion, which is in this completed products operations hazard. He just didn't mention it. Now, Innscorp does not defend the judgment in its brief by saying that was correct. But J6 doesn't apply to damaged floor and damaged drywall. It applies to your work. It says property damage is excluded as to that particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it. This plumbing contractor didn't do anything with the drywall. The plumbing contractor didn't do anything with the floors. Your Honor, the reason I'm hesitating is that that's an advantageous view of the that I haven't advanced. Judge Ishii didn't. Our position is that how it reads. Pardon? Isn't that how it reads? Well, it also says that particular. You don't have to go to the exception in both coverage again. Exclusion doesn't apply. Well, it's. Next. That wasn't how I read the exclusion, and perhaps I clearly must have read it wrong. But even Innscorp doesn't make either of the arguments. Innscorp says that the reason that J6 doesn't isn't operative here or is operative here rather is it reverts to their. You have to go to the red brief at pages 17 to 19, and their argument just comes down to that the only way the exception to the exclusion would apply is if there was covered damage. And there's no covered damage because Exhibit 334 means there's no covered damage. That's their argument. Okay. There is no argument by Innscorp that Judge Ishii correctly applied the exception to the exclusion. They do not defend it. Their position, and they say this very clearly, they say that I'm just summarizing this, their two-page argument, but if you read it, what you'll find is they'll say that exclusion J6 applies and because the plumbing system had to be replaced because Todd's work was incorrectly performed. Then they say that we have to show, Bailey must show, that the products-completed operation hazard applies. Then they explain what it means. They say this clause has the effect of providing coverage for property damage following completion of the insurer's work or operations, and it only covers property damage other than to the work itself. But J6 requires the work to be incorrectly performed on it, referring to your work. If it is stopped with the word performed, they may have an argument. Your Honor, your – I missed those – the significance of the on it, and I think that goes to the broader argument of this is one of the most difficult insurance policies I've ever tried to construe. That's why I'm – no. It's not your problem because the exclusion has to be carried by the insurance company, not by you. That's correct. But, counsel, as you interpret opposing counsel's argument, it is that J6 applies only because there's no coverage damage. That is correct. That is correct. And since that's their argument, but the argument is not correct, and therefore, there is a trial issue with that, and this case cannot be resolved properly on summary judgment. But what about the issue of an occurrence within the policy period? Isn't that also a ground for you losing that the judge issue found that there was no evidence submitted? And, by the way, let's start with principles. He ensured it has to prove that an occurrence occurred during the policy period, correct? Correct. And the policy period here, strangely enough, although the work started in 1996, started in July 1, 1997. And they say there's no evidence here that any damage to property occurred, that is, an accident occurred, during the policy period. What's the response to that? Well, Judge Isi rejected that, I think, correctly, because there is no specific – I think it's a tribal issue of fact, is what he found, that you couldn't look at the record and decide. I mean, the damage was the – I thought – I read his opinion that the evidence you presented was not conclusive as to the existence of an occurrence within the policy period, and therefore, that the insurance company won. No, I don't believe so. Well, if he did, and I may have read his opinion wrong, is the standard of proof on summary judgment whether the evidence is conclusive? No. No, I mean, it's just – but there were two – I think, and I could be wrong, I think that the analysis that you're looking at was in Judge Isi's rejection of our summary judgment motion, where, you know, we – he said, you don't get to there. You haven't conclusively shown as a matter of law that you're entitled to win. Then he put that motion aside, flipped it around, and looked at Inscorp's motion. And there he found that the record was not sufficient to show as a matter of law that there was no occurrence, and therefore, this case – the reason he granted summary judgment was for the application of J6. What about the argument that you don't have coverage – or, pardon me, Todd, your asinore, did not have coverage, unless there were a negligent accident, and all you – all Todd did was not perform his contract and not fulfill his warranty I think Judge Isi analyzed that argument appropriately, that under California law, the Vandenberg decision, that the form of the agreement doesn't control and that you have to – that CGL coverage for defective performance of a construction project can be framed as a negligence claim. Because that, under the grant of coverage, is damages for which the insured become legally obligated. Yes. Whether it's a tort or contract. That's correct. So they made this argument in the district court. Judge Isi said there are a host of cases that have rejected that. That's not the law in California anymore. He did everything right as far as you're concerned, except apply J6. That's right. Okay. And with that, I try to reserve the balance of my time. All right. Thank you. May it please the Court, Annette Valatori-Williamson, appearing for Appellee Insurance Corporation of New York. Let me get your name again. I have Annette Williamson here. Annette Valatori-Williamson, yes. Shorthand, Annette Williamson. I think that appellant is incorrect as to the extent to which there is no dispute. And I want to focus this Court's attention directly on exclusion J6, which I think really is, you know, kind of the key determinative exclusion for purposes of this Court's decision. Before we go there, do you agree with opposing counsel that your argument is centered around whether or not there was any covered damage under the policy? I think the Court's position is that the judgment contains an award of damages that are clearly not covered under the policy, and that there's no dispute on that point. And I think that Mr. Ehrlich acknowledges that there's no dispute that the judgment at a minimum awards damages for repair and replacement of the plumbing system. Now, with that being said, I think the burden at that point shifts to the plaintiff to produce evidence that the judgment does contain an award of covered damages, and I think that the plaintiff has failed in its burden of proof on that point. Why wouldn't that be summary – why wouldn't that preclude summary judgment? If there's still a material question of fact regarding which damages in the judgment are covered and which damages are not covered, why – that's the quintessential question of fact, isn't it? Well, that's something that I think the Court addressed in the Golden Eagle refinery case that we've cited in our brief and relied upon. And in that case, the Court – the Court applied some – That was an indemnification case, right? I'm sorry? Was that not an indemnification case? It was an indemnification case. And it was an indemnification case addressing whether the pollution exclusion applied, and in that case, the insurers essentially admitted that there was a possibility that the judgment could contain – could contain an award for covered damages, but that there wasn't sufficient proof by the insurer to meet their burden of proof. In other words, the Court – Is this a summary judgment case? Yes, it is. Okay. Now, tell me what language you're relying upon in this case to say that summary judgment is appropriate when there are both covered and non-covered items of damage in a judgment. In the Golden Eagle refinery case? Yes. If you look to page 1311 of the Golden Eagle refinery case. Okay. The Court discussed that the insurers demonstrated that Golden Eagle, who was the insured What paragraph are you looking at? I am looking on page 1311 of the Golden Eagle refinery case, and it's at the top of – The second column? Yes. Or at the top of the first column, actually. I have a Lexis printout. I'm not certain. All right. And it starts with – what's the sentence you're reading? I'm starting to read right following the Court's reference to footnote 6. Okay. Properly relying on Golden Eagle's admission, the insurers demonstrated that Golden Eagle could not reasonably be expected to prove what proportion, if any, of the millions of dollars of alleged damages were under the coverage of which the various policies issued by Respondents, failing which Golden Eagle could not recover anything. Okay. So now, why does that mean that summary judgment is appropriate in this case? Because was there a finding that Golden – that in this case, that Todd or – Todd could not reasonably be expected to prove what proportion, if any, of the coverage? I think the evidence – I think that the insurers did provide sufficient evidence to the district court, sufficient to shift the burden to Bailey to establish evidence of a prima facie case of coverage, and that evidence – in Golden Eagle, the Court relied upon admissions of the insured in that case that – that the insured could not allocate. The district court thought there was still a question of fact on that from Exhibit 334, whatever the exhibit was, that that in itself raised a question of material fact. The – the district court raised – held that that raised a question of fact by looking at the parenthetical phrase in the superior court's statement of decision referencing damage to drywall, tile, insulation, et cetera. I would submit that that isn't really evidence that the judgment contains an award of covered damages. It's – it's – it's some acknowledgment of the possibility that it may, but then it becomes Bailey's burden to prove by evidence, by – by offering the underlying trial transcript in the case or evidence submitted in the trial of the underlying case to show that the judgment does, in fact, contain an award of covered damages and the proportion of that judgment that it contends is covered. There was two reasons why, under the original case, the Court found that the floor and the drywall had to be taken out. One was that there was damage by leaking, and therefore it had to be taken out. And the other was it – it was not wet, there was no damage by leaking, but you had to take it out to get at the plumbing to fix the plumbing. Why isn't it permissible for the assignee, Bailey, now to say, I'll take a – I'll go back into the record and I'll find how many square feet of flooring was wet and how many square feet of drywall was moldy, and that is the percentage which I'm entitled to. What's wrong with that? You mean you think he should have done that here? I think that he should have put it – I mean, if that evidence was available, why didn't he put his best foot forward here and apply it to the assignee? But the question we have is whether any reasonable trier of fact from the findings of the trial court, that there was damage to flooring and drywall, could find that there was damage to flooring and drywall. What you're saying is you can't quantify it based on the evidence in this case. Correct. All right. Well, you know, Exhibit 334 does provide estimates for the repair, removal and replacement of cabinetry, building insulation, doors, windows, mirrors, et cetera. And the repair of the plumbing is – itself is included in the estimate separately. So even if the exclusions were held to eliminate coverage for certain damages, couldn't a reasonable jury find the estimate in 334 included amounts to repair or restore damage that is not covered? Thus, it seems to me that Beatty has offered evidence that it can prove that a portion of the underlying judgment is – reflects damages to which they are entitled. I mean, even when the district court says, here the situation is not one that precludes the possibility that Beatty could at trial present evidence to bring at least some losses, and with Exhibit 334, that possibility is there, so why shouldn't that go to trial? Well, but then what the district court did do is it applied Exclusion J6 to the extent those damages are awarded in the judgment. The district court found that Exclusion J6 applied to exclude them. So you don't agree with opposing counsel's representation that both of you agree that the district court erred in applying J6? You don't think that the district court erred in applying Exclusion J6? I believe the district court applied Exclusion J6 properly and that this Court should affirm on that basis. Tell us why. Because Exclusion J6, you know, assuming that, again, we're looking only at this issue of resulting damage to the drywall, tile, insulation, et cetera, assuming that's even included in the judgment, first you look at the exclude, you know, the first part of Exclusion J6, which says that, which excludes property damage to that particular part of any property that must be restored, repaired, or replaced because your work was incorrectly performed on it, the district court in its order said that the plain language of Subsection J6 excludes coverage for damage to any part of the property, parenthesis, except, comma, arguably, the plumbing work itself that occurred because work was incorrectly performed. No, no, no, performed on it. That's where he went wrong. What work did Todd perform on the wall, drywall, or floor? He didn't. Well, the, the, if I can provide a broader interpretation of that exclusion, it says that any property that must be restored, repaired, or replaced because your work was incorrectly performed on it. Todd's work was incorrectly performed on the hotel. And as a consequence, that particular part of the hotel, tile, paint, insulation, et cetera, must be repaired or replaced. That is not third-party liability insurance. Well, in at least one case, that issue has not been squarely addressed in California. You have no cases, then. Pardon? You have no cases. I have one case that, in which this exclusion was applied in this very manner, and it was cited in my brief on page 18. And the name of that case is Century Indemnity Company v. Golden Hills Builders. And it's a South Carolina case, 348 South Carolina 559, a 2002 case, in which the court held that incorrectly performed stucco damage, incorrectly performed stucco work, which damaged correctly performed substrate and substructure work that was performed by a different subcontractor, was subject to the exclusion for J6. What case is this? This is called the Century Indemnity Company v. Golden Hills Builders. And it is cited on page 18 of my of the appellee's red brief. And for what jurisdiction? South Carolina. Aren't we bound here by California law? California has not addressed the issue of. You're citing this as persuasive, but not binding. Correct. That's what I meant by no cases. There are no California cases. There isn't a California case that has applied exclusion J6 under these circumstances. But the case of Barocco West, Inc. cited in my brief also on page 18 is consistent with the interpretation that I'm advocating. If what you're saying is that J6 excludes coverage because you can interpret it as to a hotel. Or you can interpret it as to the plumbing, his work. There's an ambiguity. And we should follow 1649 of the Civil Code and interpret it most strongly against who wrote the policy. That's standard insurance law, right? Well, I would agree with that, except that where terms in insurance policy have been judicially construed, there is no ambiguity as a matter of law. Pardon? Not in California. Except that the Barocco West Court, which is a California opinion, 110 Calat 4th 96, it's a 2003 case, which was cited in my brief also on page 18, holds that the exclusion for J6 and in particular the exception to the exclusion for the products completed operation hazard exception has the effect of providing coverage to completed work or operations that have been put to their intended use by any person other than the contractor or subcontractor. I am reading from page 18 of my red brief at the top of page 18. What language in the case are you reading from? That is cited on page 104 of the Barocco West case. Page 104? I don't think it has a page 104. Maybe I'm on the wrong case. But anyway, counsel, that was a case that said it provides coverage because of the exception to the exclusion, not exclusion clause. And then the Barocco West case also, and I'd like to refer you to page 105 of that case. Let's go back to 104 where you're reading from. I wasn't there yet. Okay. The language you were reading is the policy excludes damage to the property caused during ongoing construction operations performed by the contractor or subcontractor. Right. Completed work includes not only entire projects but also partial projects that have been put to their intended use by any person other than the contractor. Now, what are you saying that means in terms of our analysis of these cases? I'm saying that that paragraph there, I believe, explains the exception to the exclusion. The products completed operations has an exception to the exclusion, which would be Bailey's burden to prove as the exception. And then if you turn to the other one. But wait. I thought you said that the exception applies. So what case are you? The exclusion applies. I mean, the exclusion. So what case are you citing to us that the exclusion applies? Because the exclusion has to apply before the exception comes into play. So what case are you citing us to to support your argument that the exclusion applies? Well, this Barocco West case. And if you look there at page 104, it applies to this exclusion. It interprets this exclusion to say the policy excludes damage to the property caused during ongoing construction operations performed by the contractor or subcontractor. And then if you turn to page 105. When it says the property, what does that mean? Well, I believe in there's several exceptions within the policy. The property can refer specifically to the insured's work product. And certain exceptions in the policy do apply to that work product. And there's no question that that's the case here. And then other portions of the exceptions. And in particular, I would say exclusion J6. The language of exclusion J6 does apply to not just Todd Plumbing's work, but property damage to any portion of the property upon which Bailey is performing work. What language in Barocco West supports your argument in that regard? There's language on page 105 in which it refers to under the Scottsdale policy, although property damage includes any loss of use resulting from physical injury to tangible property, the policy excludes property damage caused during ongoing construction operations. And that language isn't limited to just the subcontractor's work, but any property damage. But it doesn't define property. Well, that's the limitation on this Barocco case. And that's why I say in California it hasn't been extended to apply to resulting property damage that occurs before the contractor has completed his operations. California courts have just not addressed that. It's a specific issue. And that in the court in Century Indemnity, the South Carolina court did address that specific issue. And if there aren't any further questions. Oh, I'm sorry. I'd just like to ask one more time. Sure. Isn't the scope of Exhibit 334 a highly disputed issue of material fact that clearly precludes summary judgment in this case? Well, it's – I think it's evidence that – certainly it's evidence that the award of damages is key to the figure in there. And that estimate is entitled, you know, is intended to repair and replace the plumbing system. And I think that at that point the burden shifts. But not exclusively. But Bailey hasn't shown us how damages in Exhibit 334, you know, what portion of Exhibit 334 does reflect cover damages. Okay. Thank you. Thank you, counsel. Mr. Early. First question. What evidence is there in Exhibit 334 or any other portion of your proof in the trial  cover damages? The evidence in Exhibit 334 is that the damages shown in 334 were caused by water damage to floors and water damage to drywalls. Exhibit 334 does not apportion the damages. It doesn't apportion. How could a – if you were to have whatever evidence you adduced in the trial court below sent into a jury, what could the jury do with 334 to say, well, here it is, there's 1,500 square feet of floor to replace because of damage through leaks. There's 6,400 feet of drywall to replace because of damage by leaks. And here's the dollar amount, and we can come to a verdict. They can't – no reasonable trier of fact could do that based on your proof. I don't think that 334 required us – would be the only evidence that they could possibly look at. That's all the evidence that you submitted to the trial court. The issue is, following up on Judge Nelson's question, is there any evidence in 334 or elsewhere in the record which would allow a reasonable trier of fact using every inference in your favor to make any apportionment between third property damaged by water and third property – third-party property removed in order to put back the plumbing? I want to answer that two ways. One, the other part of the evidence is the finding of the trial court specifically that the leaks caused damage. I think that creates an inference, since the judge found that the leaks caused damage, that the court was awarding in the sort of – in a general verdict sort of way damages that encompass the repair of the damage. There's no – nothing to believe that the judge would specifically find that there were damage to the floor or the drywall. He then awarded damages under 334, which was to cover everything that – everything necessary. I don't believe – I think that the jury could find that there was some portion of that was covered. And I don't think on summary judgment it was incumbent on us to show what the apportionment would be. And the second thing I think I don't – which I don't think is necessary to decide this case. It's clearly a dispute that will be brewing below, is I believe that the cost of ripping out the defective system, the drywall, the framing, is covered, because that's damage. And the California law specifically holds that. And there's a Supreme Court case called Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Company, 63 Cal. 2nd. 602, that specifically goes to this issue. There is a more recent case, a 2005 decision from the Court of Appeal in California called Cal Farm Insurance Company v. – it's a Polish name. I'll do my best. Krusewicz, I believe. K-r-u-s-i-e-w-i-c-z at 131 Cal. 4th. 273, that reviews all of the law and concludes – doesn't resolve it and says it's an open question. It's an open question under California law about whether all these other costs in the estimate would be covered. And I would submit that under – the argument I would make under Geddes & Smith is that the plumbing system in the part of Exhibit 334 that's for the mechanical replacement of the plumbing, that's clearly the plumbing system, that's not covered. And everything else is. We've got a contract here, an insurance contract, which defines property damage means physical injury to tangible property. Yes. It doesn't – if the property isn't physically injured until somebody rips it out with a crowbar, it hasn't been injured as a result of the accident or occurrence, which is the triggering mechanism for the coverage. The Geddes & Smith case, Your Honor, and the Bundy case, which it relies on, Bundy tubing case, talks about that there were radiant heating installed tubes in a cement floor and the radiant – they failed and they were defective and the policy didn't cover the cost of the defective tubes, but it did cover the cost of tearing up the concrete to replace the tubes. That is an open question under California law. Did they hold, as a matter of law, that under an ISO policy definition of property damage, the rip-out was property damage? It was a CGL case. I like your argument a little bit better that as long as you can show some portion of it was property damage, then it's a matter of tribal issue. And that's my main argument. That's why we – for the purposes of this summary judgment, I think that's all you need to find. And I want to just close by saying I invite the Court to read pages 17, 18, and 19 of the red brief, because when you do, you will find that Inscorp's explanation of how J6 works was just as I said, that they say that the completed operations hazard would apply here as long as there is covered property damage. And the reason it doesn't apply here is because in their view, there's none as a matter of law. That's the only argument they make. And with that, I think that this case has to be remanded for the trial. Thank you. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: D.W. Nelson, Rawlinson, Bea